IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| In the Matter of the Personal Restraint of | No. 84856-9-I |
| JOSE ANTONIO NAVA, | UNPUBLISHED OPINION |
| Petitioner. | |

BOWMAN, J. — Jose Antonio Nava seeks relief through this personal restraint petition (PRP) from his jury conviction for first degree murder. He argues he is entitled to relief because his trial attorney provided ineffective assistance, the State suppressed evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), newly discovered evidence warrants a new trial, and the cumulative effect of these errors deprived him of his rights to due process and a fair trial. We disagree and deny his petition.

FACTS[1]

On February 19, 2018, Tye Burley won $2,000 at a casino and rented a hotel room, which he shared with his friend and drug supplier, Jeremy Dailey. Dailey planned to steal Burley's money and called on his friends, Jared Evans, Nava, and Nava's brother, Jorge Nava Martinez Jr., to help.

---

[1] We repeat the relevant facts set forth in our prior opinion only as necessary for the issues we address in this PRP. *See State v. Nava*, No. 80948-2-I (Wash. Ct. App. June 14, 2021) (unpublished), https://www.courts.wa.gov/opinions/pdf/809482.pdf.

Nava Martinez told the others he would get a "cuete"[2] for the robbery. The men knew Burley was taking his girlfriend, Kristin Schram, to a tattoo shop on February 20, 2018, and they planned to mace and rob Burley as he left the shop. The men drove a white Dodge Durango belonging to Nava's girlfriend, Tiffany Beston, to the tattoo shop. But they aborted the plan when a police car drove by. They instead went to Burley's hotel to carry out the robbery.

The four men sat in the Durango and smoked methamphetamine, awaiting Burley's return to the hotel. When Burley and Schram returned, Nava and Nava Martinez got out of the car and confronted them. One of the men pointed a gun at Schram, and she ran away. Nava and Nava Martinez then beat Burley to the ground and robbed him, and Nava Martinez shot Burley in the head. Nava, Nava Martinez, Dailey, and Evans fled the scene, split the money, and abandoned the car.

Burley died from his injuries two days later. Everett police officers found the abandoned Durango about a week after the murder. The police never recovered the gun used to kill Burley. But the medical examiner removed a bullet jacket and two lead fragments from Burley's head. Forensic testing showed a .38 caliber handgun fired the bullet. Nava and Nava Martinez fled to California, where police later identified and arrested them.

The State charged Nava, Nava Martinez, Dailey, and Evans with first degree murder with firearm enhancements. Dailey and Evans pleaded guilty to reduced charges in exchange for "truthful" testimony against Nava and Nava

---

[2] "Cuete" can be slang for "gun" in Spanish.

Martinez. At trial, the State called Nava's girlfriend, Beston, who testified she owned a Beretta Pico .380 caliber handgun, which she kept in a lockbox in her home. Beston said Nava knew of the gun and had access to it. She discovered that her gun was missing several months after Burley was shot.

Washington State Patrol Crime Laboratory (WSPCL) forensic scientist Dijana Coric testified about the bullet jacket recovered from Burley. Coric testified that she entered its characteristics into a Federal Bureau of Investigation (FBI) database, which returned a list of guns that could fire a bullet with the same characteristics. A Beretta Pico .380 was not on the list. Even so, Coric testified that the list generated through the FBI database was not "all-inclusive," so she could not entirely rule out Beston's gun as the source of the bullet jacket without seeing the gun. But on cross-examination, Coric agreed that it was highly unlikely that a Beretta Pico .380 fired the bullet jacket.

Dailey testified against Nava at trial. Dailey testified that he was threatened while in jail to write two letters claiming Nava Martinez and Nava did not kill Burley, and that the brothers were in the back seat of the Durango during the robbery. He sent one letter to "some address," and he was supposed to send the other to Nava Martinez's attorney. But Dailey did not send the second letter because he was told to make a phone call to Nava's mother instead, proclaiming the brothers' innocence.

A jury convicted Nava of first degree murder while armed with a firearm, and the court sentenced him to 331 months. Nava appealed the conviction, alleging that 1) the State improperly minimized its burden of proof during jury

3

selection, 2) the trial court erred in denying Nava's motions for a mistrial after witnesses twice violated a pretrial order, 3) the prosecutor committed misconduct by vouching for two witnesses, 4) the trial court erred in admitting certain evidence, 5) the cumulation of these errors resulted in a denial of a fair trial, and 6) the court improperly imposed a DNA[3] fee.[4]  We rejected Nava's claims, affirming his conviction.[5]  But we remanded to the trial court to strike the DNA fee.[6]

Nava then timely filed this PRP.

ANALYSIS

Nava argues he is entitled to relief because he had ineffective assistance of counsel, the State suppressed exculpatory evidence in violation of *Brady*, newly discovered evidence warrants a new trial, and the cumulative effect of these errors deprived him of his rights to due process and a fair trial.[7]

Relief through a PRP is extraordinary.  *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 132, 267 P.3d 324 (2011).  A petitioner may seek relief if they are under unlawful restraint.  RAP 16.4(a).  To succeed on a PRP, a petitioner must show that either 1) they were "actually and substantially prejudiced by constitutional error," or 2) their "trial suffered from a fundamental defect of a

---

[3] Deoxyribonucleic acid.

[4] *Nava*, No. 80948-2-I, slip op. at 5.

[5] *Id.* at 16.

[6] *Id.*

[7] On July 15, 2024, Nava moved to adopt the arguments of co-petitioner Nava Martinez's brief under RAP 10.1(g).  We deny the motion as untimely under RAP 10.2(a).

nonconstitutional nature that inherently resulted in a complete miscarriage of justice." *In re Pers. Restraint of Finstad*, 177 Wn.2d 501, 506, 301 P.3d 450 (2013).

1. Ineffective Assistance of Counsel

Nava claims he received ineffective assistance of counsel because his trial attorney failed "to call a forensic scientist to rebut the State's testimony" that a Beretta Pico .380 could not be excluded as the gun that fired the bullet jacket. We disagree.

An ineffective assistance of counsel claim presents mixed questions of law and fact that we review de novo. *State v. K.A.B.*, 14 Wn. App. 2d 677, 707, 475 P.3d 216 (2020). The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). There is a strong presumption that counsel's representation was reasonable. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). To succeed on a claim of ineffective assistance of counsel, the defendant must show 1) that "counsel's performance was deficient" and 2) that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). If a petitioner fails to satisfy either of the *Strickland* prongs, we need not address the other. *Id.* at 697.

To determine whether deficient performance resulted in prejudice, we apply the same standard in a PRP as we do on appeal. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 845-47, 280 P.3d 1102 (2012). That is, a successful

ineffective assistance of counsel claim satisfies the PRP's actual prejudice requirement. *Id.* at 846-47. To show prejudice, a petitioner must establish there is a reasonable probability that "the result of the proceeding would have been different" absent counsel's deficient performance. *Id.* at 843. The "likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111-12, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

Here, we need not reach Nava's claim of deficient performance because he fails to show prejudice. Nava argues counsel's failure to call an expert deprived him of "the ability to develop a theory that the firearm used in the incident was *not* the Beretta Pico .380 that belonged to Beston." But this was precisely the defense Nava's attorney developed at trial.

At trial, defense counsel cross-examined WSPCL forensic scientist Coric[8] as to the source of the bullet jacket, prompting her to concede that it was highly unlikely Beston's gun fired it. Defense counsel also cross-examined Beston about when she noticed her gun was missing to cast doubt on the State's suggestion that Nava Martinez used her gun to kill Burley.[9] And in closing argument, defense counsel highlighted that Beston's gun "was not the weapon

---

[8] The State tried Nava and Nava Martinez jointly. Nava Martinez's attorney conducted the cross-examination of Coric. Nava does not argue his attorney was ineffective for failing to separately cross-examine Coric. He challenges only his attorney's failure to call an expert witness.

[9] Beston testified that she had just "recently" discovered her gun was missing when officers came to her house looking for it, which was a few months before trial.

that caused . . . Burley's death," and that her gun was different from "the kind of gun that was described to" the jury as the murder weapon.[10]

Nonetheless, even if Nava's attorney called a witness to testify that Beston's gun could not have been used to kill Burley, Nava fails to show that the testimony would have affected the outcome of his trial. Ample evidence shows that Nava and Nava Martinez robbed Burley and that Nava Martinez shot Burley in the head with a .38 caliber firearm.

Dailey testified that Nava Martinez told him he planned to get a gun for the robbery. Dailey said that while waiting at the hotel to rob Burley, Nava Martinez was in the driver's seat of the car and Nava was in the front passenger seat. When Burley arrived, Nava and Nava Martinez got out of the car and ran over to him. Dailey testified that he then heard a gunshot, and the brothers ran back to the Durango. Nava Martinez was holding a gun and yelling that he shot Burley in the head.

Evans corroborated Dailey's testimony. He similarly testified that when Burley got to the hotel, Nava and Nava Martinez "went and robbed him." He said that he could not see the robbery but heard Burley scream " 'help,' " and then he heard a gunshot. Evans testified that Nava and Nava Martinez then ran back into the truck and Nava Martinez said, " 'I shot him in the head.' " Investigators later found Nava's DNA on the gearshift and Nava Martinez's DNA on the steering wheel of the Dodge Durango.

---

[10] Schram described the gun as silver with "a pretty long barrel." Beston's Beretta Pico .380 is a small, semi-automatic pistol intended for concealed carry, with a short 2.7-inch barrel.

The evidence also showed that Nava fled after the shooting. Beston testified that when Nava returned home after the shooting, he was "frantic" and told her they had to leave. She said they spent the next several nights in hotels in Mount Vernon and Bellingham. Beston testified that they then spent a few nights at an acquaintance's house, when Nava suddenly left without explanation. The police later arrested Nava and Nava Martinez in California.

Because Nava can show no prejudice from his allegations of deficient performance, we reject his claim of ineffective assistance of counsel.[11]

2.  Newly Discovered Evidence

Nava claims that the letters Dailey wrote proclaiming the innocence of Nava and Nava Martinez amount to newly discovered evidence warranting a new trial.[12] We disagree.

RAP 16.4(c)(3) provides relief for a petitioner if "[m]aterial facts exist which have not been previously presented and heard, which in the interest of justice require vacation of the conviction, sentence, or other order." We review a claim under RAP 16.4(c)(3) using the same test as a motion for new trial under CrR 7.5. *In re Pers. Restraint of Fero*, 190 Wn.2d 1, 15, 409 P.3d 214 (2018). A

---

[11] Nava also argues the State violated *Brady*, 373 U.S. at 87, by failing to disclose a photograph of the bullet jacket showing its cannelures, or grooves, and that the photograph amounts to newly discovered evidence warranting a retrial. According to Nava, the evidence was critical to his ability to argue that Beston's gun was not used to kill Burley. We note that the bullet jacket itself was both disclosed to Nava and admitted as evidence. Regardless, even if Nava could show a *Brady* violation or that the photographs were newly discovered evidence, he fails to show prejudice for the same reasons discussed above.

[12] In his PRP, Nava does not specifically identify newly discovered evidence as the theory supporting his argument. But the State treats his argument as one of newly discovered evidence, and Nava adopts the same basis for his argument on reply. As a result, we analyze his claim under the rubric of newly discovered evidence.

petitioner is entitled to a new trial based on newly discovered evidence if he can show that

> (1) the results will probably change if a new trial is granted; (2) the evidence was discovered since trial; (3) the evidence could not have been discovered before trial by exercising due diligence; (4) the evidence is material, and (5) the evidence is not merely cumulative or impeaching.

*In re Pers. Restraint of Delmarter*, 124 Wn. App. 154, 162, 101 P.3d 111 (2004). If any of these factors are missing, we should deny the request for a new trial. *State v. Roche*, 114 Wn. App. 424, 435, 59 P.3d 682 (2002).

Nava argues that neither he nor his investigator were "aware of [Dailey's] letters" before trial, and that he "did not have the opportunity to discover the[ir] existence." His claim is unconvincing.

Nava knew or should have known about the letters prior to or during the trial. The court spent significant time discussing the admissibility of the phone call Dailey made to Nava's mother and the scope of the direct and cross-examination of Dailey on this topic. In these discussions, the parties mentioned the letters several times. And Dailey testified about the letters. He said that he wrote "a letter stating that [Nava Martinez] and [Nava] didn't have anything to do with [the shooting]." But Dailey testified that the letter was not true and that he only wrote it to avoid beatings in prison.

Still, even if Nava could show the letters amount to newly discovered evidence, he cannot show prejudice. Again, when seeking postconviction relief, a petitioner must demonstrate that a nonconstitutional error resulted in a complete miscarriage of justice. *In re Pers. Restraint of Swagerty*, 186 Wn.2d

801, 807, 383 P.3d 454 (2016). Here, the letters themselves were not admitted at trial. But Dailey testified about the phone call between him and Nava's mother, during which he told her that the brothers were not involved in the murder. And the letters contained the same information. As a result, Nava fails to show that his failure to discover the letters before trial resulted in a complete miscarriage of justice.[13]

Nava fails to show he received ineffective assistance of counsel, the State violated *Brady*, newly discovered evidence warrants a new trial, or cumulative errors deprived him of a fair trial. As a result, we deny his petition.

Brennan, J.

WE CONCUR:

Feldman, J.                    Chung, J.

---

[13] Nava claims that the cumulative effect of the trial errors, when taken together, "deprived him of his rights to due process and a fair trial." *See State v. Weber*, 159 Wn.2d 252, 279, 149 P.3d 646 (2006) ("Cumulative error may warrant reversal, even if each error standing alone would otherwise be considered harmless."). Because Nava identifies no trial error, the cumulative error doctrine does not apply.